IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HELEN TOMOCIK, | ) | CASE NO. 1:15 CV 971 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

## Introduction

Before me[1] is an action by Helen Maria Tomocik under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 16. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ")

Tomocik, was 52 years old at the time of the administrative hearing,[10] graduated high school, and attended college for two years.[11] She reports past work experience as a cashier, floral designer, cook, waitress, press operator, seamstress, and a furniture refinisher.[12] Tomocik was last employed in September 2013 as a cook at Perkins.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Tomocik had the following severe impairments: status-post left ulnar nerve decompression

---

[6] ECF # 10.

[7] ECF # 21 (Commissioner's brief); ECF # 18 (Tomocik's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 12 at 3 (Tomocik's charts).

[9] ECF # 12 (Tomocik's fact sheet).

[10] ECF #12 at 1.

[11] *Id.*

[12] *Id*.

[13] *Id*.

with neuropathy, degenerative disc disease of the lumbar and cervical spines, trochanteric bursitis bilateral hips, alcohol abuse, anxiety, and depression (20 CFR 4041520(c) and 416.920(c)).[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Tomocik's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and meaning the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours and sit for 6 hours, but would need a sit-stand option every hour for five minutes without leaving her work station; frequently climb stairs and ramps, but not ladders, ropes, scaffolds; can balance, stoop, and kneel; frequently crouch and crawl; can reach in all directions; can handle, finger and feel with the dominant hand; and occasionally handle and finger; with the non-dominant hand; no exposure to hazardous conditions; can make simple routine tasks with simple short instructions, make simple decisions, have few workplace changes, have no fast paced production quotas; and have superficial interaction with coworkers, supervisors, and the public (superficial refers to the intensity of interaction and mean no negotiation, etc.).[15]

Given that residual functional capacity, the ALJ found Tomocik incapable of performing her past relevant work as a cashier, floral designer, institutional cook, and fry cook.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ

---

[14] Transcript ("Tr.") at 12.

[15] *Id.* at 15.

[16] *Id.* at 19.

determined that a significant number of jobs existed locally and nationally that Tomocik could perform. The ALJ, therefore, found Tomocik not under a disability.

**B.     Issues on judicial review**

Tomocik asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Tomocik presents the following issues for judicial review:[17]

- Whether the ALJ should have given "controlling weight" to the opinion of Dr. Anthony Ruffa since it was well supported and not inconsistent with the other substantial evidence in the record.

- Whether the ALJ failed to provide "good reasons" for discounting the opinion of Dr. Anthony Ruffa.

- Whether the intensity/persistence of claimant's subjective complaints was rejected based solely on objective findings.

- Whether the intensity/persistence of claimant's subjective complaints was rejected based solely on the ALJ's personal observations.

- Whether the ALJ's decision cited the appropriate regulatory standard for evaluating subjective complaints, but never actually explained how the standard was applied to the facts and circumstances presented in the case.

- Whether the substantial evidence of record does not support a finding that the claimant can perform work activities in an ordinary work setting on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[17] ECF # 18 at 11.

# Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. Treating physician rule and good reasons requirement

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

---

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[21] 20 C.F.R. § 404.1527(d)(2).

[22] *Id.*

-6-

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[28] *Id.* at 535.

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

[34] *Id.*

[35] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's

---

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

[39] *Rogers*, 486 F.3d at 242.

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[42] *Gayheart*, 710 F.3d at 376.

[43] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

[53] *Blakley*, 581 F.3d at 406-07.

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

---

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

[60] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id.* at 409-10.

[66] *Id.* at 410.

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

### 3.    *Credibility*

As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[69] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms or limitations will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[70]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms

---

[68] *Id.* at 940.

[69] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[70] *Id.* at 34484.

have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[71]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[72]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[73] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[74]

---

[71] 20 C.F.R. § 416.929(c)(2).

[72] *Swain*, 297 F. Supp. 2d at 988-89.

[73] 20 C.F.R. § 404.1529(c)(3).

[74] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[75] A court may not disturb the ALJ's credibility determination absent compelling reason.[76]

## B.     Application of standards

The claimant here is proceeding *pro se* and presented her claims not in a usual brief, but by attaching a letter by her former attorney to the Appeals Council, with the support of treatment notes from her physician. That letter, together with the supporting material, is clear as to the claims it raises.  My review of the claimant's overall presentation in this case, together with the Commissioner's response, has satisfied me that it is thorough and competent, presenting both the Commissioner and me with an adequate basis for addressing the issues raised.

---

[75] *Buxton*, 246 F.3d at 773.

[76] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

-16-

Essentially, Tomocik raises two issues:

(1) that the ALJ erred by failing to give controlling weight to the opinion of Dr. Anthony Ruffa, D.O., and otherwise failed to give good reasons for discounting that opinion; and

(2) that the ALJ impermissibly rejected Tomocik's subjective complaints about the intensity and persistence of her pain.

### a.    Dr. Ruffa's opinion

Dr. Ruffa, Tomocik's treating physician, completed a functional assessment in which he opined, *inter alia*, that Tomocik could lift two pounds; stand or walk for a total of four hours, and do so for one hour without interruption; could sit for two-three hours; could never climb, balance, kneel or crawl; and would be affected in her ability to handle, feel, or pull using her left hand.[77]

The ALJ noted this opinion, and further noted that Dr. Ruffa was a treating source, but then assigned that opinion only "little weight."[78]  In stating reasons for the weight given, the ALJ noted that an MRI of Tomocik's lumbar spine "revealed only minor issues," and that her wrist fracture was not expected to last 12 months, but was actually now "healed,"with Tomocik "doing well."[79]  In addition, the ALJ in an earlier section of the opinion observed that less restrictive functional limitations similar to those adopted in the RFC were offered

---

[77] Tr. at 963-65.

[78] *Id*. at 18.

[79] *Id*.

by a state agency reviewing physician,[80] and also by two evaluating medical consultants, who both examined Tomocik.[81]

While it is true that the evaluation of Dr. Ruffa's opinion was not in strict conformity with the rubric applicable in such cases, it is also true that the ALJ articulated clear, specific reasons for affording that opinion lesser weight, and that those reasons permit meaningful judicial review of that decision. In particular, the ALJ's citation to the mild problems evidenced in the lumbar spine MRI show substantial evidence in support of the decision to accord greater weight to the less restrictive postural limitations in Dr. Moten's opinion rather than the more restrictive limitations in Dr. Ruffa's opinion.

Moreover, as the Commissioner observes, the ALJ earlier discussed the improvement Tomocik experienced following ulnar nerve decompression surgery, and also observed that despite Tomocik's complaints of hip pain and use of a cane, a physical examination showed normal strength and normal range of motion.[82]  Taken together, these findings also provide substantial evidence supporting the decision to afford only little weight to the functional opinion of Dr. Ruffa.

---

[80] *Id*. at 17.

[81] *Id*. at 18.  Tomocik contends that she was never seen by Dr. Moten, and that Dr. Massullo did not perform the tests indicated. But, as the Commissioner notes, Tomocik did see Dr. Moten in connection with a prior application for disability benefits, and has failed to develop her argument as to Dr. Massullo. ECF # 20 at fn. 7. Dr. Moten's opinion was the one most favorably weighed by the ALJ, who gave it "considerable weight." Tr. at 18. The ALJ specifically cited in the opinion to Tomocik's earlier visit with Dr. Moten, which appears in the record. *Id*.

[82] Tr. at 16.

-18-

Accordingly, the decision of the ALJ to give little weight to the functional capacity opinion of Dr. Ruffa is supported by substantial evidence and was articulated with sufficient specificity to permit meaningful judicial review.

**b.    *Credibility***

As the Commissioner relates, the ALJ here cited four reasons why she discounted Tomocik's credibility as regards her complaints of pain:

(1) Tomocik was not interested in treating her symptoms, in that she did not fill her prescription for Liboderm patches because they were not covered by insurance;

(2) Tomocik was not credible in asserting that she could not otherwise afford her medication because she was financially able to afford a one-pack-a-day cigarette habit;

(3) Tomocik was not credible in claiming her back pain was severe since there was no support in the MRI for such a level of pain, and a physical examination no weakness, no atrophy, normal muscle tone, no tenderness, and normal coordination and gait; and

(4) Tomocik was not credible in testifying that she had stopped drinking alcohol when the record shows that she has continued to drink on a daily basis.[83]

The claimant's failure to follow prescribed treatment may be seen as casting doubt on the claimant's credibility.[84]  Moreover, it has also been recognized that an ALJ may properly diminish a claimant's credibility by showing that the claimant asserted a financial inability

---

[83] *Id*. at 17.

[84] SSR 96-7p.

-19-

to pay for prescribed care, but was purchasing cigarettes instead.[85] Similarly, an ALJ may properly consider a claimant's inconsistent statements about alcohol use when evaluating the claimant's overall credibility.[86] Finally, it is well-established that subjective complaints of pain are evaluated, at least in some degree, by examining the objective physical evidence to determine if that record supports the claims.[87]

Keeping in mind that evaluating credibility rests with the ALJ,[88] and that this decision is entitled to great deference by the reviewing court,[89] I find no basis to disturb the decision of ALJ in this instance as to Tomocik's credibility.

c.    *New evidence*

As part of her submission, Tomocik attached new medical records from 2015 to her fact sheet[90] and to what was in essence her "brief."[91]  Because these records were neither before the ALJ nor presented to the Appeals Council, they may not be considered here for

---

[85] *Strong v. Social Security Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004).

[86] *Holmes v. Astrue*, 2010 WL 1258080, at *11-12, n.5 (N.D. Ohio March 26, 2010).

[87] *Walters v. Commissioner of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997)("Discounting credibility to a certain degree is appropriate where the ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

[88] *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009).

[89] *Walters*, 127 F.3d at 531.

[90] ECF # 12-1 at 3-5.

[91] ECF # 18 at 3-12.

purposes of determining if the decision is supported by substantial evidence.[92]  Moreover, Tomocik has failed to argue, and so has waived the argument, that these records contain new and material evidence such as would warrant a remand under sentence six of 42 U.S.C. § 405(g).[93]

### Conclusion

Substantial evidence supports the finding of the Commissioner that Tomocik had no disability. Accordingly, the decision of the Commissioner denying Tomocik's applications for disability insurance benefits and supplemental security income is affirmed.

IT IS SO ORDERED.


Dated: June 13, 2016                                      s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

---

[92] *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

[93] *See, Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007)(Principle that issues that are not developed are deemed waived applies to *pro se* litigants).

-21-